Good morning and welcome to the Ninth Circuit. I'm Judge Nelson and glad to be joined by my colleague Judge Beide and Judge Rakoff who's visiting with us from New York and we're just very grateful for all of our visiting judges who help us. It's a great privilege and honor to be here and I also enjoy the very warm welcome I've had, even though I am a foreigner from New York. Well we also want to welcome counsel. We're glad to start seeing them come back into the courtroom and we hope that that expands in the months coming up as we transition back to fully in court. We ask that during arguments you please keep to your allotted time frames, try and sum up as your time's expiring. Let us know if you want to reserve time for rebuttal. We'll go ahead and proceed with our oral argument calendar. We have three cases that have been submitted. Bonagas v. Garland, case number 15-73744. Palmdale Estates v. Blackboard Insurance, case number 21-15258. And then we have three cases scheduled for argument and the first is Johnson v. Ryan, case number 20-15293. And Mr. Wassam? Yeah, there you go. Thank you, your honors, and may it please the court. Daniel Wasim for Appellant Richard Johnson. I'd like to reserve two minutes of time for rebuttal. I'd like to begin by discussing why Mr. Johnson's removal from the step-down program violated due process. Mr. Johnson had two independent liberty interests secured by his participation in the step-down program. First, his interest in receiving good time credits and parole eligibility, and second, his continuing liberty interest in avoiding conditions of confinement that pose an atypical and significant hardship. By removing Mr. Johnson from the step-down program, defendants interfered with those liberty interests, requiring due process protections to achieve. So did he have an alternative in the form of debriefing? So we don't contend that he had a reasonable or a meaningful alternative for the reasons we discuss talking about Arizona review procedures more generally, because that would not allow him to vindicate the liberty interest in avoiding conditions of atypical and significant hardship, because that route would lead him into protective custody. But, well, I mean, protective — is your position that protective custody in and of itself is a violation of the Constitution as well? We don't — well, we say it's an atypical and significant hardship, Your Honor. And so when talking about this Court's precedent, what is a meaningful review procedure, one of the — you know, the interest that Mr. Johnson is trying to vindicate through the step-down program is — is getting out of that atypical and significant hardship. Right. But wouldn't they — wouldn't you have to show that there was a — there was no justification for him going into protective custody? It seems like there would be a basis here. Is your position that he always goes into protective custody and can't make an additional showing that he's no longer a harm or a risk? If he — if he renounces and debriefs, Your Honor, yes, he will be placed in protective custody, versus if he's in the step-down program — There are no — it's automatic per se. There's no opportunity for him to show that, I understand the default is that I go into protective custody, but for these reasons, I should — I should not go into protective custody. That's correct, Your Honor. Based on the regulations, an individual who debriefs is automatically placed into protective custody. And that's because, in effect, they are providing information about fellow gang members, right? Correct, Your Honor. That's — that's the justification. So it's not — in that sense, it's not a really genuine alternative, right? Because if you enter into — if you choose debriefing, you are choosing to put yourself in danger of retaliation by your fellow gang members, and the only way to avoid that is to put you back in the equivalent of solitary. Correct, Your Honor. And that's why the step-down program is so important for Mr. Johnston. That's why he has an expectation or interest in remaining for it, because it's his only way of exiting solitary confinement and getting out of the atypical and significant hardship. Can I point you to ER 184? This is the regulations, and in 1.5.1.4, it says debriefed inmates who — and then if you go down to the second option, it says passed a polygraph examination shall be eligible for double bunk housing in accordance with established criteria, regardless of custody level. That suggests that there's an option for debriefed inmates not to go into protected — the first option is, you know, we'll put you into the appropriate protective custody facility, but the second option suggests that if you also pass a polygraph examination, you can go into double bunk housing. I don't read that as, Your Honor, and I haven't — I'll take a look at that regulation. I don't understand it to be saying that that's an alternative. I think based on Mr. Johnston's allegations and the regulations therefrom, it's — it's fairly clear that moving into protective custody is an atypical and significant hardship because it restricts basic meaningful access to other human beings. And so because of that, Mr. Johnston's interest in being — Roberts. So, counsel, what is the — what is the relationship between the good-time credits, which you mentioned, and the SDP program? Correct, Your Honor. So if Mr. Johnston completes the step-down program, he'll be eligible again to receive his — or apply to receive his — Right. But that's not a consequence of the SDP program. That's a — that's a — that's a problem of his classification under the STG validation. Correct. So but if he completes the step-down program — Sure. But that — but that — I don't — I'm trying to figure out why the SDP then — why the liberty interest in receiving the good-time credits is attributable to the SDP as opposed to the STG. I see, Your Honor. And the reason would be that you look at whether or not, in the words of Wilkinson, there's an expectation or interest that Mr. Johnston, on the four corners of the step-down program, is going to be able to vindicate that liberty interest in receiving good-time credits and parole eligibility. Here, that's the very purpose of the program. But is good-time credits a — a liberty interest? I mean, I understand, you know, being confined in solitary confinement, that might be. But good-time credits is — is there any precedent that supports that good-time credits is a liberty interest? Yes, Your Honor. McFarland squarely held that Arizona — this Court's decision in McFarland squarely held that Arizona prisoners have a liberty interest in receiving good-time credits. And that is our basis for showing that Mr. Johnston has a liberty interest in proceeding through the step-down program. And did that involve the — the step-down program or the STG classification? So that was — that was not in the context of — of the step-down program. That was an initial validation when someone lost their good-time credits. And we're saying that this is the exact same situation, is it's an adverse action taken that deprives Mr. Johnston of his expectation. Yes, but there's no classification here involved in the — in the STG or STP problem. In terms of — so, I mean — It's not a — it's not a — it's not a — it doesn't change his classification. The classification is — is the result of the STG validation. Correct, Your Honor. And for that, that's a different — you have — you have a different set of problems there as to whether you think there's a due process problem. So, Your Honor, if he completes the step-down program, that is able to change his classification. So the two are — are interrelated. So if he completes the step-down program, then he has the opportunity to regain his good-time credits and parole eligibility by being placed into a lower classification and not — and then, again, being into general population. I want to talk a little bit about Arizona — our due process argument on Arizona's review procedure. So this Court has recognized three elements that prison officials must incorporate into a meaningful review program for individuals in solitary confinement. First, the program must — or the review must assess whether a prisoner remains a danger to prison security. Second, the review must engage in some sort of substantive reexamination of the evidence. And third, even if those are met, the prison officials still need the discretion to meaningfully change security level if the conditions warrant it. Don't these boil down to the same question, though, whether the debriefing process offers him an opportunity to get out of what would be considered solitary confinement? Meaning, if the debriefing process did offer that alternative, wouldn't that take care of both liberty interests? So it wouldn't, Your Honor. So even if, for example, this Court finds that renouncing a debriefing can — satisfies the strictures of the due process clause as to meaningful periodic review, you would still have a due process violation on the step-down program because the liberty interest inquiry is not comparative. Rather, you look at the four corners of the step-down program and ask, did it create an expectation or interest that he would be able to vindicate some important liberty interests here? And in this case, it's clear because that's the very purpose of the program, is to vindicate those important liberty interests. If there are no further — I've got a couple of questions, so I'm going to ask the presiding judge to extend the time just a little bit. So I've got several questions. So on 186, this is the reintegration phase one. So this is part of the SDP. At step one, one of the things that you've got to do is provide evidence of a high school equivalency preparation program. So let me just do hypothetically. I don't know exactly what Arizona has in mind there, whether that's a term of art or whether it refers to a series of things. But let's suppose it's something like the GED requirement, and that as part of the GED requirement, you have to show successful completion of a number of — of classes, including some graded classes in which we must maintain at least a C. And let's suppose this English teacher gives him a D, and that means that he won't be able to get the GED, he can't satisfy this, he's out at — at integrated phase one. Is he entitled to a hearing on — on whether he deserved the D or not? If he's removed from the program based on an adverse action that would deprive him, then, of his liberty interest, then I think the answer is yes, Your Honor. If there's a reason to remove him, that is necessarily going to interfere with his expectation or interest of receiving, especially for someone like Mr. Johnson, who's at phase four of the program. He's nearly out to the general population. And so he has a very vested expectation or interest in receiving and invalidating and vindicating those liberty interests found so important and significant by this Court and the Supreme Court. He's entitled to due process at every — at every step over every criteria here? That would be our contention, yes, Your Honor. I would like to go back to the — to the issue about the STP, because you do have — you do have a challenge to the STP validation program. This is the one that Judge Snow refused to certify. So are you — do you still contend that that — that that violates due process? The — the — sorry, Your Honor, again, the — the STG. I'm sorry, the — the STG validation program. So Judge — Judge Snow issues the first order in this case, which is the one that allows a couple of claims to go forward and — and refuses to certify other claims. I see. Yes. The — so the meaningful review, whether or not his periodic reviews are — we maintain that, correct, Your Honor? So what is our standard of review? Since that was excluded at the screening stage by the judge, do we reverse him outright if we find that — that Arizona's policy is unconstitutional? Can we even get to that question? Yes, you can. This Court reviews de novo. Okay. And so if we — if we review that, we can — we can reverse it and find it unconstitutional, which is what you're inviting us to do. Correct. Does that also mean that we can find it constitutional? Or is there — is there any room here for disputed — disputed facts on which we would need to send this back to — to Arizona? There could be disputed facts. For example, it seems that perhaps Your Honors have questions about whether or not protective custody — But I need to know what your position is. If you think there are disputed facts, then we can't grant — we can't reverse in favor of your client. Correct. Yes. But we also — but that also means, then, that we probably couldn't affirm on behalf of the State. Do you want us to find that this has to go back for further fact-finding? No. Our contention is that we can succeed on the due process argument. Okay. So you think — you think that there are no material disputed facts here and that we can decide that question? De novo. Yes, Your Honor. Okay. Thank you. Thank you, Counselor. That's the remainder for rebuttal. Thank you. Good morning, judges. My name is Patrick Boyle, and I'm representing appellees Ryan, Days, Crabtree, Montano, and Belt. I want to start with a few undisputed facts in this case. And one of those is that the Arizona Department of Corrections has a goal of and the corresponding behaviors that the inmate gang membership entails, which is prison violence and criminal activity. Well, I don't think there's any dispute about that. The question is, is that properly implemented here? And could you address my question that I asked about this ER-184, 1.5.1.4, debriefed inmates? Is it — am I reading this correctly, that if they pass a polygraphic examination, they're eligible for double bunk housing? Or do they always go into protective custody? Correct. And I would like to clear this up on the record. Mr. Johnson never disputed that renouncing and debriefing below was unavailable to him for any reason. Well, I have a real hard time understanding why debriefing is a meaningful alternative. How many people actually engage in debriefing? And because Mr. Johnson never disputed that below, that — I understand that point, counsel. Would you just answer my question? I unfortunately can't answer that question because it hasn't been developed on record. All right. So tell me what debriefing consists of. Again, because Mr. Johnson didn't dispute that below, we didn't develop that. You don't know. It is in the policy, Department Order 806. It does detail the basic outline of the debriefing program. Isn't it a fact that debriefing requires you to provide information about other members of the gang so that you are automatically putting yourself in physical jeopardy? I would say that you do have to provide information about the gang in general. That does not mean necessarily informing on other gang members or necessarily placing yourself in danger. Isn't the whole point of this provision for putting people into protective custody is because Arizona recognizes that people who go the debriefing route will be in jeopardy of retaliation? Correct. There is a real possibility of that. And isn't protective custody just another name for solitary? No, not at all. Why? In what way? In what way is it different? Inmates can reduce their custody level to close, medium. Unlikely that they could get down to minimum custody, but medium and close custody situations. A medium custody situation would be dormitory cell housing. That's not solitary confinement. As the other justice pointed out, there is a possibility for double bunk situations outside of... So that is a possibility, but how often is that used? Is that a real possibility or not? Because what it says is if you pass the polygraph examination, shall be eligible for. Is there a separate section for eligibility? Because I'm assuming you've still got the problem of most times, I assume the prison's going to say, well, we're going to put them in protective custody for their own risk. Right. And there are entire protective custody units. It's not a solitary confinement situation. And Mr. Johnson's not in solitary confinement. He's in maximum custody. There is a pretty significant difference. Tell me physically, what's the difference? He's housed with another inmate. And that by definition is not solitary. And I would direct... Isn't part of the problem that the district court didn't allow any discovery, at least as to the annual review, because he dismissed this at the screening process, right? I don't think that's a problem. And again, Mr. Johnson had the opportunity to find that discovery. But not really, because as to the annual review, the question is whether the annual review and the... I guess your point is he still could have looked at the debriefed process, even under the STG. He could. And he had the opportunity to contest that statement of fact, and he did not dispute it. That he never put any sort of evidence that anyone is at risk for renouncing and debriefing, or more specifically, that he is at risk from renouncing and debriefing. Therefore, protective custody is a very suitable alternative for him. That is all that's in the record. And because renouncing and debriefing is available to him at all times, he could do it today and get into a lower custody level. But on... I mean, I just am not clear why the district court, in dismissing the first... I'm not sure why he dismissed the first complaint when the second one was going to go forward. Because it puts him in an awkward position, where if we say, hey, the record's unclear as to debriefing, he should have the opportunity to develop that as to the annual review process. And he wasn't given that opportunity. I do believe that he was, because of the evidence put forward by the state in supporting our motion for summary judgment, and his opportunity to dispute those statements of fact, we did put forth evidence about what the debriefing program entails in the form of the department order. Your position seems to be, we could affirm the district court on an alternative ground, which is, even if summary judgment had been filed on the first point, it could have been denied for the same reason it was on the second point. And I do want to address the point that Mr. Johnson's made regarding losing good time credits. He lost those good time credits when he was validated as an STG member. He received due process for that. His validation is not at issue in this case. So for this court's purposes, he was validly validated as a... But there were no good time credits that he lost by purposes of being taken out of the SDP program? Not a single one. Yeah. Mr. Johnson's contention, as I understand it, is that he can't regain those. The only way to regain those is by either debriefing or successfully completing the SDP. Correct. And now he's being — and now he can't complete the SDP. He's been taken out of that. And all he wants is an opportunity to contest the reasons for which he was removed. Correct. And he can still renounce, though. And we have to remember that he is a validated prison gang member. There are consequences for being a prison gang member. And the department's goals and legitimate, penalogical purposes for that are undisputed. If he wants to restore his ability to get good time credits, he needs to leave his gang and show that that is not the most important thing going forward for him. There's no reason that he can't renounce and debrief. He never put one forward. Counsel, with respect to the retaliation claim, I want you to assume for purposes of my question that I was prepared — that I'd be prepared to send this back to the district court for further — for further development of the record. If this went back on the retaliation claim, would Mr. Johnson have an opportunity to contest the three facts that were the basis for him being excluded from the SDP program? I mean, he would have — he did dispute them in his summary judgment. So I'm not sure exactly — are you talking about at a hearing? Well, in some — in some way. In some way before the district court, can he — can he raise those? The evidence — the direct evidence of retaliation comes from the statements that were made to him by — is it Sergeant Belt? Yes. But it might be relevant if he could show that the reasons that had been advanced were — were manufactured. That is, that these were not legitimate reasons for excluding him. That certainly would add to the proof that he was being retaliated against. So does the State have a position as to whether on the — if we were to return the retaliation claim, whether — whether that other additional evidence could be challenged? I think he had that opportunity and lost it. Well, you're — he was pro se below, yes? Right. So isn't it a well-established principle of pro se law — of our law that we should very liberally construe what a pro se prisoner raises and not rest on the kind of technicalities that we would adhere to with lawyers? Oh, you didn't raise that below. When we recognize that we're going to have to send the case back anyway and there are obvious that he could have raised, why shouldn't they be considered below? I believe that the law is that he does need to raise those below and that he has enough in there that he survived the screening order. He had the opportunity in discovery to develop that argument at that point. And even in his original opening brief, which I would direct you to, he states that he could have developed more evidence to do so. That's too late. And I would say on the — But you said he could have developed more evidence, perhaps. But did he develop enough to constitute a genuine issue of material fact? It seems like — I mean, our questions are unclear as to whether the debriefing process is sufficient or not. Why isn't that a material fact that needs to be sent back perhaps for trial? Because he didn't dispute it. It was paragraph 6 of our statement of fact that the ability to renounce and debrief is available at all times. He said no dispute. That was his chance. And he had a whole statement of facts of his own for his own motion for summary judgment where he could have provided evidence that that wasn't available to him for any sort of reason — risk, danger, all those things. And I would say on the retaliation claim, as I wrap up, that the document — there's no allegations of impropriety regarding the search. He was searched as a regular course of business as all step-down inmates arriving to a lower custody institution for search. The officers could not simply ignore documents that had clear inmates who were in a security threat group in his possessions. He can't participate in any gang activity. And I will find — The question has nothing to do with this case. And I apologize, but since your time is over, with the indulgence of my colleagues, why does Arizona makes — in this process makes such use of polygraphs when the overwhelming scientific evidence is that they are unreliable? I don't have any answer for the use of polygraphs. Thank you. Thank you, counsel. We'll give you two minutes for rebuttal. Thank you, Your Honor. So the district court's conclusion that there was no liberty interest in the step-down program was based upon the assumption that there was a meaningful alternative in renouncing and debriefing. And it's renewed by defendants today, is that he could debrief and be out free and free — What about the position that your client didn't properly preserve that? And sort of didn't challenge that below? Your Honor, I think that he properly — he brought a separate due process claim, and I would direct — But can you point me in the record to where he said that there was no alternative for debriefing for him specifically? I don't know if he necessarily said there's no alternative to debriefing, but he did mention in the context of the step-down program that he had that liberty interest. And I would state that there's — you know, the liberty interest inquiry is not comparative. So even if this — you know, there is this alternative route, and this Court finds it constitutionally sufficient under the Due Process Clause, there would still be a step — a due process violation with the step-down program, because on its — you know, the four corners of the program, it creates this expectation or interest in receiving and vindicating these very weighty interests recognized by this Court. And so on the double bunk regulation, I just wanted to address, Your Honor, I went and looked at that. You know, as I think Your Honor's raised, there's absolutely no indication how often that happens, and it's never raised by defendants that that could happen in Mr. Johnson's case. And so our — Well, hold on. But I — it seems like you — your client has a — I get that for the — the motion to dismiss, but on summary judgment, it seems like we — we are entitled to read this, and it seems like he'd have to bring forward some evidence that that's not actually available. It's in the regulation. The State says we'll — we'll double bunk if you pass the polygraph. I don't think it says you will double bunk, Your Honor. I think you're eligible. And again — You're eligible for double bunking. Right. There — there may be other things, in fact, including an inmate may — may request a single cell for various reasons. Right. And that's — sure, Your Honor. And I think that — but that would, again, show why he cannot vindicate his interest in — in removing himself from an atypical and significant hardship. And if there's no further questions, we request the Court reverse the district court. Thank you. Thank you, counsel. Thank you to both counsel for your — your professional and well-received arguments in this difficult case. Thank you especially. We're always grateful. You've carried on a long tradition of law students very aptly arguing before us, so much appreciated.
judges: BYBEE, NELSON, Rakoff